FILED

97 NOV -5  PM 2: 00

U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION**

HAROLD B. RHODEN )
)
    Plaintiff, )
)
vs. )    **CV-97-PT-0554-E**
)
UNION FOUNDRY CO. )
)
)
)
    Defendant. )

ENTERED

NOV 5 - 1997

**MEMORANDUM OPINION**

### I.   BACKGROUND

Harold Rhoden began working for Union Foundry in March of 1955.  Union Foundry employed Rhoden as an iron pourer until he was terminated on January 5, 1996.  Rhoden was born on April 12, 1933 and was sixty-two years of age upon his discharge. Beginning in August, 1995, Rhoden received three written disciplinary memos for "poor job performance" and three days suspension.  Upon issuance of his fourth memorandum, Union Foundry terminated his employment.  Rhoden claims that this sequence of citations and his ultimate discharge were motivated by age discrimination.

Rhoden filed suit against Union Foundry for age

1

discrimination and retaliation, pursuant to the Age Discrimination in Employment act ("ADEA") 29 U.S.C. §621 et seq. Defendant Union Foundry files this motion for summary judgment claiming it is entitled to judgment as a matter of law with regard to both claims.  Union Foundry maintains that Rhoden is unable to offer evidence sufficient to establish a prima facie case of age discrimination either through the circumstantial or direct evidence routes and that he cannot demonstrate a pretextual dismissal or intent to discriminate.  Defendant also argues Rhoden fails to make a prima facie claim of retaliation.

## II.  UNDISPUTED FACTS

Harold Rhoden worked for Union Foundry for forty years prior to August, 1995, during which time he received four disciplinary memos and one oral counseling.  The plant and the Glass, Molders, Pottery, Plastics & Allied Workers International Union adopted a four step progressive disciplinary procedure.  Steps one and two are written warnings.  Step three is an additional written warning accompanied by a three day suspension.  Step four is a written report followed by termination.  This step also includes a mandatory and binding arbitration procedure before a neutral arbitrator.

On August 1, 1995, Rhoden received a disciplinary memo,

2

filed and signed by his immediate supervisor since 1958, David
Farr.  The report alleged "poor job performance" when Rhoden ran
his ladle hoist through an open switch on the overhead rail,
causing the travel mechanism to fail.  Neither Rhoden nor the
union filed a grievance in response to this memo.   Rhoden
received another disciplinary memo for "poor job performance,"
step two, on October 20, 1995 when he reportedly "short-poured" a
mold.  On November 30, 1995, Rhoden reached step three of the
process and was suspended for three days.  Rhoden allegedly ran
the molten iron ladle hoist mechanism up into the cable housing,
causing the cable to break and the iron ladle, still containing
red hot iron, to drop to the pouring catwalk.  Supervisor Leon
Nolen issued Rhoden his fourth and final step on January 5, 1996.
Rhoden allegedly failed to pour iron into molds going to the
cooling line after being warned not to do so.  David Farr did not
issue the fourth step nor participate in the decision to
terminate Rhoden's employment.

Rhoden filed a grievance concerning his discharge.  Robert
J. Ables conducted a full evidentiary hearing and arbitration
proceeding on September 24, 1996 in Oxford, Alabama.  Ables
concluded that Mr. Rhoden had been guilty of "poor job
performance" and was thus terminated for "just cause."

3

Part of Rhoden's evidence of discriminatory intent is a series of conversations between Rhoden and his supervisor Farr. It is undisputed that Farr asked Rhoden about his plans to retire on three separate occasions over three years. Each time the inquiry came on the heels or in anticipation of Rhoden's birthday.

### III.  CONTENTIONS OF THE PARTIES

**A. Defendant Union Foundry's Contentions**

Union Foundry contends that Rhoden's claims of age discrimination and retaliation are due to be dismissed as a matter of law. Union Foundry asserts that there is no genuine issue as to any material fact concerning Rhoden's claims. Rhoden fails to state a prima facie case of age discrimination or retaliation.

1.  Rhoden does not make a prima facie case under the circumstantial evidence or "pretext" analysis.

Union Foundry contends that Rhoden has not provided sufficient evidence to fulfill the prima facie requirements for an age discrimination claim. First, Rhoden was replaced, not by a member of the unprotected class, but by a man only ten months younger. Rhoden cannot demonstrate that the replacement was "substantially" younger than he was. And second, the arbitrator concluded that Rhoden was fired for just cause, his performance

4

was not satisfactory.  Since his performance did not meet the legitimate expectations of his employer, he was not qualified for the current position.  Therefore, two prongs of a prima facie case are not satisfied.

Moreover, Union Foundry contends that once the arbitrator concluded Rhoden was fired for "just cause" and therefore not qualified for the position, Rhoden is estopped from relitigating that question as part of the present action.  The court should treat his lack of qualifications for the position as a settled fact.  If there is no genuine issue as to Rhoden's qualifications for the job, summary judgment is due for failure to state a prima facie case.

> 2.  Rhoden cannot offer sufficient facts to dispute Union
> Foundry's purported reason for firing him.

Even if the court finds that Rhoden has made out a prima facie case, Union Foundry argues that he submits insufficient facts to show Union Foundry acted pretextually in terminating him for poor performance.  The plaintiff must show both that the reason stated for his dismissal was false and that the real reason was discrimination.  Union Foundry contends that Rhoden is unable to do either, let alone both.  The court need only find that Union Foundry believed the reason it cited and acted

5

honestly during the process to defeat any attempt to prove
pretext.  Union Foundry contends its reason could not have been
false since the neutral arbitrator reached the same conclusion.
Even if that finding does not bring with it an estoppel effect,
it is certainly undisputed evidence weighing heavily in favor of
summary judgment.  There is not sufficient evidence for a
reasonable trier of fact to conclude that Union Foundry intended
to discriminate against Rhoden in terminating his employment.

    3. Rhoden loses on a "direct evidence" theory as well.

    Union Foundry contends that the plaintiff falls far short of
providing sufficient direct evidence of intent to discriminate to
survive summary judgment.  The court should bear in mind that not
every comment concerning a person's age presents direct evidence
of discrimination.  Mr. Farr asking Mr. Rhoden about his plans
for retirement on three separate occasions, over three years,
each around the time of his birthday, does not constitute
sufficient direct evidence.  Farr did not participate in the
decision to terminate Mr. Rhoden nor did he issue the fourth
disciplinary memo.  There is no nexus between Farr's remarks and
Rhoden's dismissal.  Union Foundry contends that this scant
direct evidence does not make out a genuine issue of material
fact.

4. Plaintiff's retaliation claim fails.

Union Foundry argues Rhoden cannot make a prima facie case for retaliation against it. Rhoden claims he was fired in retaliation for filing an EEOC charge. Union Foundry contends that the only "but for" cause for Rhoden's termination was his poor performance. Rhoden has presented insufficient evidence to undermine this fact. Rhoden is unable to overcome the burden of proving pretext in the retaliation context as well.

**B.  Plaintiff Rhoden's Contentions**

1. Rhoden has substantiated a prima facie case of age discrimination.

Rhoden contends that he has made a prima facie case that presents an "illusive factual question" which must be determined by a jury. Whether Rhoden was performing his duties in a "qualified" fashion is a fact question that may not be decided as a matter of law.

Rhoden contends that he is under no obligation, as part of the prima facie case, to prove that he was replaced by a nonmember of the protected class. Showing that the replacement was substantially younger is just one way of creating the inference that the decision to terminate was based on illegal discrimination.

7

Rhoden contends that he was qualified for the job.  The drastic onset of disciplinary memos was motivated by age discrimination in an attempt to force retirement.  Rhoden had only received four written warnings in forty years of service for the defendant.  He then received four more memos and was fired in less than six month's time.  All four warnings arrived, coincidentally, after Rhoden made known his plans to postpone retirement.  Rhoden's supervisors all acknowledge he was a well-qualified iron pourer, a good employee, conscientious and concerned about the quality of his work.  He was one of the most experienced pourers at Union Foundry, prompt and rarely absent, never insubordinate and a "definite asset to Union Foundry."  Rhoden denies his guilt for any of the four disciplinary memos.  His receipt of the fourth and final memo was the most abominable.  He maintains that he was not even at his station, but on a break, when the unfilled mold was sent to the cooling line.  His replacement, Charles Smith was covering his position at the time and was undoubtedly responsible for the mistake.  Rhoden contends that management knew this but that it cited him for the infraction anyway.

Moreover, "poor performance" infractions are nowhere found in the union contract.  It is a subjective infraction that is left to the supervisor to assess and conclude with little

reviewability.

Union Foundry contends that there is no evidence that it knew that Rhoden was on break when the mold went unfilled to the cooling off line on January 5, 1996. Nor is there evidence it knew that Charles Smith was responsible for that mistake. The plaintiff is misrepresenting the truth by so asserting. The sections plaintiff cited to support this assertion, Exhibit 19; Nolen, p. 85-87, 101, contain nothing to substantiate these claims.

> 2. There is ample evidence to support an inference of discriminatory intent and/or pretext.

Rhoden contends that there are numerous facts that support drawing the inference that Union Foundry fired Rhoden because he was old and not because of "poor job performance." As stated above, Rhoden denies that his performance was anything less than qualified. Claiming poor job performance was a false and dishonest reason for his termination. For example, the discussions that Farr had with Rhoden about his plans to retire create the inference that management was both aware and displeased with Rhoden's decision to continue working. Union Foundry claimed that there was no nexus between Farr's remarks and the decision to terminate. In response, Rhoden argues that

9

Farr shared his knowledge of Rhoden's retirement plans with his
supervisors and any personnel decisions were based on a common
pool of information.

Union Foundry contends that these discussions about
retirement are neither direct nor circumstantial evidence of age
discrimination.  No one told Rhoden that he should, must or ought
to retire.

In addition, Rhoden contends Union Foundry knew that Rhoden
was not responsible for allowing the unpoured mold to go to the
cooling line.  Rhoden asserts it was Charles Smith, Rhoden's
replacement pourer on the day of the final infraction, fifteen
years his junior, who was at fault.  Management issued the memo
to Rhoden, the sixty-two year old veteran.  Smith was not cited.

Rhoden points to the comment made by Tom Leonard, assistant
plant manager, in a meeting with Rhoden, his union representative
and Union Foundry.  Leonard told Rhoden he would have to place
him in a job that "a sixty-three year old man could do."  Leonard
was part of the decision-making process to terminate Rhoden.
Leonard's treatment of the EEOC charge of discrimination is
further evidence of his position on Rhoden's employment.  Rhoden
contends that the man who was supposedly performing a full

10

investigation in response to the grievance, Leonard, had never
read nor seen a copy of the charges.  Leonard's attitude toward
the charges were that there "was no foundation for it."  Vice
President/General Manager Ray Scofield, charged with overseeing
all of the plant's activities was unable even to articulate what
the non-discrimination policy at the plant was nor could he
confirm that the policy was posted anywhere at the plant.

Union Foundry contends that Leonard's statement relating to
finding a job for a sixty-three year old is not sufficient
evidence to survive summary judgment.  Moreover, Union Foundry
did perform an investigation in response to the EEOC charge.
Leonard was not instructed to do so but realized this was his
responsibility.  Leonard believed there was no foundation for the
discrimination claim because he did participate in the
investigation of the grievances and received all of the facts and
information as to why Rhoden was disciplined.  Mr. Scofield was
asked to recite or quote language from the age discrimination
policy and was unable to do so.  This inability to recite policy
language does not mean he did not understand or could not
articulate what the policy was.  He was never asked to explain
the policy, only to recite it.

Between December 1995 and January 1996, Farr informed Rhoden

11

that he would now be responsible for "clamping up" the molds in addition to pouring them and pulling the pins.  Rhoden claims Nolen told the core-setter, Mr. Truss, not to assist Rhoden in clamping and pulling the pins.  In fact, Nolen ordered that no one help Rhoden in this newly-added procedure.  When Charles Smith, Rhoden's relief pourer, was taking his place, he did not have to clamp and pull pins.  But once Rhoden was fired, by July 22, 1997, the iron pourers were instructed to return to their previous responsibilities of just pouring and pulling pins, no clamping.  The core-setters were told to clamp up the molds.

Union Foundry responds by claiming that all iron pourers were assigned the job of clamping up the molds and pulling the pins, not just Rhoden.  The job was later reassigned to the core-setters when the machine sped up.  There is no evidence that this reassignment occurred "shortly" after Rhoden was fired.

Rhoden's replacement, sixty-one year old Willie Coleman, received a disciplinary memo for "failure to be on the job" less than a month after replacing Rhoden.  Bo Nolen, who issued the memo, acknowledged that other employees were similarly guilty of the same infraction but did not received a memo.  Less than one month later, Coleman received another disciplinary memo for "poor job performance."

Rhoden contends that the epidemic of disciplinary memos plagued other older employees as well. Nolen was issuing numerous progressive disciplinary memos for poor performance to other employees between fifty-six and sixty years of age. They also denied guilt and claim the memos were motivated by age discrimination. For example, Edward Jacobs, age 60, was fired for refusing to sign a disciplinary memo for poor performance while other younger employees, guilty of the same infraction, were retained.

Union Foundry identifies statistics that show younger employees are disciplined much more often than the older ones. Numerous younger employees have been fired for "poor job performance."

Rhoden contends that these examples are direct evidence of an intent to discriminate on the basis of age. However, if not direct evidence, then the facts serve as circumstantial evidence supporting the reasonable inference that Union Foundry acted with pretext when it fired Rhoden claiming poor performance.

3. The decision of the arbiter does not have binding effect. Rhoden contends that the case law dictates that an

13

arbitrator's finding in an ADEA case does not preclude the litigation of that question.  The reasoning behind the cases cited by Union Foundry applied to a much different kind of a case and is inapposite to the employment discrimination context. Eleventh Circuit precedent dictates that this court not give preclusive effect to the arbitrator's findings and conclusions. The old Fifth Circuit held that an arbitration had no "collateral estoppel consequences" for employment discrimination under Title VII.  Therefore, Rhoden argues, he has offered sufficient evidence to create a factual issue of whether his termination was pretextual.

Union Foundry responds by claiming that the arbitrator's decision establishes "good cause" to fire Rhoden for poor performance.  Finding a specific fact, such that Rhoden was guilty of poor job performance, collaterally estops him from trying to litigate the question at trial.  As a result the court should find insufficient evidence to satisfy a prima facie case as a matter of law.  If not, then the finding of the arbitrator should serve as sufficient evidence that Union Foundry had a legitimate nondiscriminatory reason for firing him.  Rhoden offers no evidence that Union Foundry's description of reasons was dishonest.

14

4. The retaliation claim should survive summary judgment.

Rhoden claims he has made a prima facie showing of retaliation under the ADEA. The "but for" requirement has been met. Rhoden filed an EEOC charge of discrimination after receiving three disciplinary memos for poor performance. Rather than respond to the charge, as requested by the EEOC, on January 4, 1996, Rhoden was fired the next day.

## IV.  ANALYSIS

Summary judgment is appropriate only if this court concludes that there exists no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c); See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505 (1986). The moving party bears the burden of informing the court of the basis for its motion and identifying the pleadings that demonstrate the absence of a fact issue. Id. at 323. Once the moving party has met this burden, the nonmoving party "must produce evidence that shows there exists a genuine issue of material fact." Cottle v. Storer Communications, Inc., 849 F.2d 570, 575 (11th Cir. 1988). The court must consider whether the evidence "presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law., Anderson, 477 U.S. at 251-252  In so doing, the court views the evidence in the light

15

most favorable to the nonmoving party, in this case, Mr. Rhoden.
Carter v. City of Miami, 870 F.2d 578, 581 (11th Cir. 1989).
Rhoden must provide more than a mere scintilla of evidence in
order to survive a motion for judgment as a matter of law. Id.

   Mr. Rhoden may prove up a prima facie case of age
discrimination by one or more of three means.  He may show the
court direct evidence of the discrimination, circumstantial
evidence that creates an inference of discriminatory intent or
statistical proof that leads one to the same conclusion.  In the
present case, Rhoden attempts to show, through direct and
circumstantial evidence, that his termination was a manifestation
of age discrimination.

## A.  Plaintiff Fails to Make Out a Prima Facie Case Based on Direct Evidence.

   In his attempt to make a case out through direct evidence,
Rhoden provides the court with several facts that might support
an inference of discrimination but which do not amount to "direct
evidence."  The Eleventh Circuit in Clark v. Coats & Clark, Inc.,
990 F.2d 1217 (11th Cir. 1993) found evidence to be "direct"
when, "it is sufficient to prove discrimination without inference
or presumption." 990 F.2d at 122 (Citing Carter v. City of Miami,

870 F.2d 578, 581-82 (11th Cir. 1989)).  Only the most blatant remarks whose intent could be nothing other than to discriminate constitute direct evidence. Id.

The facts Rhoden alleges do not rise to this level of direct evidence.  Tom Leonard's comments at the Union meeting, his alleged lack of vigilance in investigating the EEOC charge, and the fact that Rhoden only started receiving disciplinary memos once it became clear that he was not planning to retire each require the finder of fact to draw inferences and make presumptions.  Similarly, the fact that a "poor job performance" disciplinary memo is a subjective infraction, found nowhere in the union agreement, does not indicate without inference that it was devised to discriminate against older workers.  Supervisor Farr's inquiries about Rhoden's retirement plans over the preceding three years, without more, do not amount to direct evidence of age discrimination.  There is no evidence that Farr encouraged suggested or demanded retirement.  Furthermore, Farr did not issue the fourth and final memo that led to Rhoden's termination.  According to the court in Eskra v. Provident Life and Accident Insurance Company, 1997 WL 633563 (11th Cir. 1997), "A statement by a person who played no part in the adverse personnel decision is not direct evidence of discrimination." Eskra at 3.  Rhoden does not meet the elements necessary for a

17

prima facie case through direct evidence. The court recognizes, however, that Farr may have played a role in allegedly discriminatory actions leading up to the termination. Although the recited evidence is not "direct evidence," it may be entitled to weight as circumstantial evidence.

**B.  Rhoden Survives Summary Judgment Through the Circumstantial Evidence Approach.**

Unable to prove direct evidence of discrimination, Rhoden may prove a prima facie case under the McDonnell Douglas scheme for circumstantial evidence. McDonnell-Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817 (1978). Plaintiff must show 1) he is a member of the protected class; 2) applied for and was qualified for the job; and 3) despite his qualifications was rejected (or terminated). 1997 WL 633563 at 3. Of course, the court can also consider the evidence which plaintiff argues is "direct evidence." According to the Eleventh Circuit in Eskra, the plaintiff need no longer show he was replaced by someone outside the protected class. Id.

1. Plaintiff provides evidence sufficient to make a prima facie case.

Viewing the evidence in a light most favorable to the plaintiff, Rhoden makes a prima facie case of age discrimination.

18

He is a member of the protected class, was terminated and was arguably qualified for the position.  Whether Rhoden was performing his job adequately and whether Union Foundry was justified in terminating him on that basis is the source of dispute.  The court is cannot rely exclusively on the conclusions drawn by the arbitrator on this question.  Whether Rhoden was qualified to continue in his capacity as an iron pourer is a material issue of fact that remains in dispute.

The court is not convinced that the law requires it give preclusive effect to the arbitrator's conclusion that Rhoden was fired for "just cause."  Nor does it feel compelled to conclude that Rhoden was not qualified for the iron pouring position.  The Eleventh Circuit does not address the question of the effect a district court should give an arbitrator's finding of fact in an employment discrimination case.  Union Foundry offers two cases, Young v. Easter Enterprises, 915 F.Supp. 58 (S.D. Ind. 1995) and Williams v. Mead Coated Board, (M.D. Ala. 1993) to persuade the court that it should defer to the arbitrator's findings.  Neither of these cases, however, dealt with how to treat an arbitrator's finding of fact in an employment discrimination case.

The Williams court states that "findings of the arbitrator with regard to discrimination issues are not binding on the

19

court...under the Steelworkers trilogy, the arbitral decision is final and binding to the extent it resolves questions of contractual rights." Williams v. Easter Enterprises, 915 F.Supp. at 1573.  In the present case, the defendant asks the court to defer to a specific factual conclusion, not an interpretation of the Collective Bargaining Agreement (CBA) or resolution of a contract claim.

Young offered a similarly limited ruling.  In that case, the court awarded the defendant summary judgment on the ADEA claims because it adopted the arbitrator's interpretation of the CBA which effectively precluded an ADEA claim. 915 F.Supp. at 66, 69-70.  In the present case, the arbitrator was executing his authority under the CBA but was not interpreting the contract as much as he was making an independent finding of fact on his way to executing a function conferred upon him by the CBA.

While the findings of the arbitrator may be probative and admissible at trial, they should not be considered the last word on the question of Rhoden's qualifications.  According to the Supreme Court in Alexander v. Gardner-Denver Company, 415 U.S. 36 (1974), the employee should be permitted to pursue fully both his remedy "under the grievance-arbitration clause of a collective bargaining agreement and his cause of action under Title VII.

The federal court should consider the employee's claim de novo.
The arbitral decision may be admitted as evidence and accorded
such weight as the court deems appropriate." 415 U.S. at 60.  In
considering what weight to assign the arbitrator's findings, the
court should evaluate 1) the degree of procedural fairness in the
arbitral forum; 2) the adequacy of the record; and 3) the
competence of the arbitrator. Id. at n. 21.  At the appropriate
time, the court will address the question of the admissibility of
the arbitrator's findings.

2. Defendant provides a legitimate reason for terminating
Rhoden's employment.

According to the burden shifting scheme set forth in
McDonnell Douglas, once the plaintiff has satisfied his burden of
making a prima facie case, the inference is raised that
discriminatory intent motivated the adverse employment action.
Eskra, 1997 WL 633563 at 3.  At that point the burden shifts to
the defendant to "clearly articulate in a reasonably specific
manner a legitimate, non-discriminatory reason for the adverse
action." Id.

Union Foundry maintains that the only reason it fired Rhoden
was because his work no longer met its legitimate expectations.
In support of this contention, Union Foundry offers the four

21

disciplinary memos.  Union Foundry argues that Rhoden was making mistakes on the job that inhibited production and endangered lives and that the best evidence of Rhoden's deficiencies is the finding made by the impartial arbitrator.

   3. Plaintiff creates a fact issue regarding pretext.

   The defendant, having satisfied its intermediate burden of production, eliminates the initial presumption of discrimination accompanying the prima facie case. Combs v. Plantation Patterns, 106 F.3d 1519, 1528 (11th Cir. 1997).  The plaintiff will survive summary judgment if there "is sufficient evidence to demonstrate the existence of a genuine issue of fact as to the truth of each of the employer's proffered reasons for its challenged action." Id. at 1529.  "The fact that a reasonable jury could...have concluded that [the employer's proffered explanation] was not the true reason he was [fired], precluded judgment as a matter of law." Richardson v. Leeds Police Department, 71 F.3d 801, 807 (11th Cir. 1995); See also, Howard v. BP Oil Co., 32 F.3d 520 (11th Cir. 1994).  The jury or court need not determine that Union Foundry was correct in its assessment of Rhoden's performance; it need only determine that the defendant, in good faith, believed plaintiff's performance to be unsatisfactory.

   In this case, the plaintiff has cast sufficient, although

22

minimal, doubt on the defendant's proffered nondiscriminatory reason. A reasonable factfinder could conclude that the employer's proffered legitimate reasons were not what actually motivated its conduct. Elrod v. Sears, Roebuck and Company, 939 F.2d 1466, 1470 (11th Cir. 1991); (quoting Moore v. Sears, Roebuck & Co., 683 F.2d 1321, 1323 n.4 (11th Cir. 1982).

**C. Rhoden's Retaliation Claim Fails**

Rhoden does not provide sufficient evidence that he was fired because he filed an EEOC charge. If his theory of a systematic scheme to purge the ranks of older employees holds true, then his dismissal resulted from age discrimination, not retaliation. The Eleventh Circuit in Hairston v. Gainesville Sun Pub. Co., 9 F.3d 913, 919 (11th Cir. 1993) announced the test for a prima facie case of retaliation. The plaintiff must show by a preponderance of the evidence, "1) a statutorily protected expression; 2) an adverse employment action; and 3) a causal link between the protected expression and the adverse action." Id. at 919. The only evidence Rhoden proffers to support a retaliation claim is the fact that one month after Union Foundry received Rhoden's charge of discrimination, one day before a response was due the EEOC from Union Foundry, Rhoden was fired. There is no evidence in the record that the Union Foundry management was reacting to the EEOC charge when it issued the fourth

disciplinary memo.  The plaintiff must do more than just make conclusory allegations that retaliation occurred to make a prima facie case.

## V.   CONCLUSION

The Court concludes that Rhoden has not presented direct evidence of age discrimination sufficient to make a prima facie case.  Rhoden has barely established an issue of material fact sufficient to survive summary judgment on a circumstantial evidence theory of age discrimination.  Rhoden's retaliation claim lacks merit.


DONE and ORDERED this _5_ day of _Nev. 1997_


_____
ROBERT B. PROPST
SENIOR UNITED STATES DISTRICT JUDGE

24